# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FRANCIS and LOUISA REIL, | : | Hon. Joseph H. Rodriguez |
| Plaintiffs, | : | Civil Action No. 13-5580 |
| v. | : | |
| RUBY TUESDAY INCORPORATED, | : | OPINION |
| Defendant. | : | |

This matter is before the Court on motion of Defendant Ruby Tuesday Incorporated for summary judgment pursuant to Federal Rule of Civil Procedure 56 and to preclude the opinions and testimony of John S. Posusney [Doc. 39]. Plaintiffs have opposed the motion and cross-moved for summary judgment [Doc. 41]. Oral argument was heard on October 29, 2015, and the record of that proceeding is incorporated here. For the reasons set forth below, both motions will be denied.

## Background

On September 3, 2011, Plaintiffs Francis and Louisa Reil visited Defendant Ruby Tuesday Incorporated's restaurant in Deptford, New Jersey. (Compl. 1.) After an employee of Defendant directed Plaintiffs to their booth, Mr. Reil attempted to sit on the booth bench but became

1

"jammed" between the seat and the table when the seat shifted position. (Compl. 1-2; F. Reil Dep., 11.)

Plaintiffs allege that Mr. Reil sustained serious back injuries as a result of Defendant's failure to inspect or maintain the bench prior to Mr. Reil's seating. (Compl. 2.) Plaintiffs further allege that Mrs. Reil was deprived of the companionship and services of her husband based on the same negligent inaction of Defendant. (Compl. 3.)

Defendant now moves for summary judgment on the basis that no reasonable factfinder could conclude on this record that Defendant had any notice of the booth's condition before Mr. Reil attempted to sit on the bench. (Def. Br., p. 6-7.)  Additionally, Defendant argues that Plaintiffs' expert opinion regarding the incident should be inadmissible in that it lacks reliability and will not assist the jury. (Def. Br., p. 10.)  Plaintiffs have filed a cross-motion for summary judgment asserting that the doctrine of *res ipsa loquitur* requires the factfinder to find Defendant liable as a matter of law. (Pl. Br., p. 9.)

## Summary Judgment Standard

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment

2

as a matter of law.  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c).  Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts

showing that there is a genuine issue for trial.  <u>Id.</u>; <u>Maidenbaum v. Bally's Park Place, Inc.</u>, 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  <u>Andersen</u>, 477 U.S. at 256-57.  Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  <u>Celotex</u>, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 249.  Credibility determinations are the province of the finder of fact.  <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

## Analysis

Defendant argues that Plaintiffs lack evidence to establish a *prima facie* case on any of their claims because its employees had no notice -- actual or constructive -- of the purportedly dangerous condition presented

by the loose booth seat. The record indicates that the Defendant's dining area contains booths with bench seats that can be lifted up from the base of the booth for the purposes of cleaning the booths and setting pest control traps underneath the booths. (Gallagher Dep., 15:3-8, 21:3-19.) In September 2011, Steritech, an outside contractor, set up and maintained all of the pest control traps that were kept underneath Defendant's booths on a monthly basis. (Gallagher Dep., 21:22-22:11.) Servers and other employees of Defendant are trained to visually inspect each booth to ensure that the area is suitable for the next customer and to wipe down the booth after every customer leaves Defendant's premises. (Gallagher Dep., 18:17-23.) Servers and hosts are expected to visually inspect the booth seat and table when they escort guests to a booth to ensure it is clean and safe for the guests to sit there. (Gallagher Dep., 30:23-31:3.) If a server or host notices that the booth seat is not secured when escorting a guest to the booth, then he or she must bring the guest to a different table. The server or host is then required to inform Defendant's management that the booth is not secured so that the problem can be remedied. (Gallagher Dep., 30:2-14.)

Christina Amerman, a server at Defendant's restaurant for approximately the past six years, testified that if she saw that a booth seat was not properly secured when she escorted guests there, she would not

seat them at that booth. (Amerman Dep., 10:2-6.) Defendant's manager testified that it is "extremely rare" that a staff member has to report that a booth seat is loose to Defendant's management. (Gallagher Dep., 30:15-22.) Amerman also testified that she does not know of any incidents where a customer complained that the booth seat where he or she was seated was loose before Mr. Reil's accident in September 2011. (Amerman Dep., 4:11-14.)

    Mr. Reil testified that before he sat down in the booth, he did not notice that anything was wrong with its seat. (F. Reil Dep., 12:10-12; 18:19-21; 19:21-24: 21:6-8.) Amerman testified that when she went to the booth to greet Mr. Reil, she saw the booth seat move slightly, causing Mr. Reil's shoulders to hit the back of the booth and his buttocks to scoot forward. (Amerman Dep., 16:3-17:8.) After Mr. Reil attempted to sit down and the booth seat moved, Amerman left to inform Defendant's manager, Michael S. Gallagher, about the incident. (Amerman Dep., 9:11-14. See also F. Reil Dep., 11:5-6.) After briefly speaking to Amerman, Gallagher went to the dining area to speak with Mr. and Mrs. Reil. (Gallagher Dep., 37:21-38:4; 39:11-17. See also Amerman Dep., 23:20-24:2, 38:24-39:7.) As he walked over to Mr. and Mrs. Reil, Gallagher noticed that there was a gap between the seat and the back of the booth where Mr. Reil sat, but the seat was not

completely dislodged or tipped over. (Amerman Dep., 36:3-7, 39:8-17.) Gallagher introduced himself to Mr. and Mrs. Reil and asked if Mr. Reil was hurt or needed medical attention; Mr. Reil responded that he did not require medical attention. (Amerman Dep., 37:5-20, 38:14-16; F. Reil Dep., 11:13-17, 18:12-18.) Plaintiffs claim that during this conversation, Gallagher stated that the seat may have come ajar because children were jumping up and down on that booth seat earlier that day. (F. Reil Dep., 20:23-21:5.) Gallagher testified that he does not recall making any statement to Plaintiffs regarding children jumping on the booth seat. (Gallagher Dep., 38:24-39:7.) Gallagher further testified that he has never seen a booth seat become loose as a result of children jumping on it. (Gallagher Dep., 31:17-22.)[1] After their conversation with Gallagher, Mr. and Mrs. Reil ate at a different booth in Defendant's restaurant. (F. Reil Dep., 21:17-22:1.)

To prevail on a claim for negligence under New Jersey law, a plaintiff must establish the existence of a duty owed to the plaintiff by the defendant, a breach of that duty, and that the breach was the proximate

---

[1] Plaintiffs' expert, John S. Posusney, with regard to whether children jumping on a booth seat could dislodge it, testified: "[A] person jumping up and down on it, for instance, if it was a child . . . if they're jumping up and down they're exerting a vertical force. That seat, to dislodge it from the frame you have to have a force in the opposite direction of gravity to dislodge it." (Posusney Dep., 14:2-11; Posusney Engineering Eval.)

7

cause of the plaintiff's injuries.  Keith v. Truck Stops Corp. of Am., 909 F.2d 743, 745 (3d Cir. 1990).  An owner of a building has a non-delegable duty to exercise reasonable care for the safety of tenants and persons using the premises at his invitation.  Mayer v. Fairlawn Jewish Ctr., 186 A.2d 274, 277–78 (N.J. 1962).  That is, "the common law imposes a duty of care on business owners to maintain a safe premises for their business invitees because the law recognizes that an owner is in the best position to prevent harm."  Stelluti v. Casapenn Enterprises, LLC, 1 A.3d 678, 691 (N.J. 2010).

"Ordinarily an injured plaintiff asserting a breach of that duty must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident."  Nisivoccia v. Glass Gardens, Inc., 818 A.2d 314, 316 (N.J. 2003).  Constructive knowledge is found if the condition had existed for such a length of time that the proprietor should have known of its presence.  Bozza v. Vornado, Inc., 42 N.J. 355, 359 (1964).  If a plaintiff presents material facts tending to show that a defendant should have been aware of the dangerous condition, summary judgment should be denied. Monaco v. Hartz Mountain Corp., 178 N.J. 401, 419 (2004).

Plaintiffs have presented no evidence of actual or constructive knowledge, but frame their theory of the case as reflecting Defendant's

failure to ensure that the seat was locked in place after its last maintenance. "To allow a dangerous condition to exist because of one's failure to properly reassemble equipment which a patron will be using renders the commercial property owner liable for injuries sustained by the business invitee who is injured while using the equipment in the manner intended while on the property within the scope of the invitation." (Pl. Br., p. 4.)

Plaintiffs seek to rely upon the testimony and report of John S. Posusney, which opines that the seat at issue could only be dislodged if it was not locked into place properly by the last person to remove it for maintenance or pest control. That is, every time the seat is removed, it must be properly clicked into place; it cannot become dislodged by a patron bouncing on the seat or sitting near the edge. Defendant has objected to the use of this opinion.

The guiding principles that inform the Court's judgment as to the admissibility of an expert opinion are found in Federal Rule of Evidence 702 and Daubert, 509 U.S. 579. Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Consistent with that Rule, Daubert established a "trilogy of restrictions" on the admissibility of expert testimony relating to scientific knowledge.  See Calhoun v. Yamaha Motor Corp., 350 F.3d 316, 321 (3d Cir. 2003).  Daubert also applies to expert testimony relating to "technical or other specialized knowledge." See Oddi v. Ford Motor Corp., 234 F.3d 136, 146 (3d Cir. 2000) (quoting Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999)).

This "trilogy" consists of "qualification, reliability and fit." Id.  The Third Circuit liberally construes the qualifications of an expert, noting that "a broad range of knowledge, skills, and training will qualify a witness as an expert . . . ." See Yarchak v. Trek Bicycle Corp., 208 F. Supp. 2d 470, 495 (D.N.J. 2002) (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994) ("Paoli II")) (internal quotations omitted).  As such, exclusion of an expert witness is "improper simply because an expert does not have the most appropriate degree of training." Yarchak, 208 F. Supp. 2d at 495 (quoting Diaz v. Johnson Matthey, Inc., 893 F. Supp. 358, 372 (D.N.J. 1995)).  Qualification is not at issue in this case.

With respect to reliability, the focus is on the "principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595.  Four benchmarks help determine whether a theory or

technique qualifies as "scientific knowledge" such that it will assist the trier of fact. See Daubert, 509 U.S. at 593. The Court considers: (1) whether the theory can be or has been tested; (2) whether the theory or technique has been subjected to peer review and/or publication; (3) the rate of error; and (4) whether the theory or technique has been generally accepted within the putative expert's respective community. Id. at 593-94. The Third Circuit adds other factors, including: (5) the existence and maintenance of standards controlling the technique's operation; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. Paoli II, 35 F.3d at 742 n.8. When considering these factors, the Court's inquiry must be a "flexible one." Id.

As for the third prong, Rule 702 requires that the "proffered expert testimony must 'fit' within the facts of the case." Yarchak, 208 F. Supp. 2d at 496. The fit requirement mandates that the testimony "in fact assist the jury, by providing it with relevant information, necessary for a reasoned decision of the case." Id. (citing Magistrini v. One Hour Martinizing Dry Cleaning, 180 F. Supp. 2d 584, 595 (D.N.J. 2002)). Thus, even if an expert

is qualified and relies on sound methodology, he must still "apply this expertise to the matter at hand." See Calhoun, 350 F.3d at 324. These factors are not exclusive. They "are intended to serve only as 'useful guideposts, not dispositive hurdles that a party must overcome in order to have expert testimony admitted.'" Yarchak, 208 F. Supp. 2d at 495 (quoting Heller v. Shaw Industries, Inc., 167 F.3d 146, 152 (3d Cir. 1999)).

"If Daubert and its progeny require anything, it is that plaintiffs come forward with proof of a valid methodology based on more than just the *ipse dixit* of the expert." Furlan v. Schindler Elevator Corp., 864 F. Supp. 2d 291, 298 (E.D. Pa. 2012) (quoting Pappas v. Sony Elecs., Inc., 136 F. Supp. 2d 413, 426 (W.D. Pa. 2000)). The Court finds, however, that Defendant's arguments address the weight or credibility of the expert, not whether his opinions are admissible under the applicable standards.

Posusney admitted that he took no measurements, did not do any load testing on the seat, failed to weigh the seat, did not calculate the center of gravity of the seat, did not determine how tall Mr. Reil was or how long his legs were, did not have Mr. Reil demonstrate how the accident happened, failed to test how easily the seat could move or flip, and did not do any rotational testing. (Posusney Dep., 7:20-11:2, 16:13-24, 56:11-15.) He determined, however, that he did not need to do so, and he testified at

his deposition why the seat measurements and the specifics of Plaintiff's body were not necessary to his analysis from a qualitative standpoint. (Posusney Dep., 7:12-8:21; 8:22-10:12).

Rather, Posusney's report explains the construction of the seat and its frame. (Report at 3.) He stated, based on his engineering inspection of the seat that the "center of mass and center of rigidity of the seat was closer to the front of the seat." (Id.) He found that structurally, the booth's bench seat was not mechanically fastened to its frame and could be removed from it. (Id. at 5.) Thus, when the bench seat was not properly seated into its frame, it made the seat susceptible to movement relative to its frame under a live load from a guest attempting to sit on it or sitting on it. (Id.) He also found that given the fact that the center of mass and rigidity of the bench seat was away from the backrest and closer to its front side, this increased the risk and probability that the seat could teeter or rotate under a live load, making the seat unstable, hazardous and dangerous for a guest to use. (Id.) The defense may discredit this opinion, but it will not be barred.

Next, Defendant argues that Plaintiffs have not produced evidence from which a reasonable jury could conclude that Defendant's conduct or omission caused Plaintiffs' injury, as there is no proof in the record of negligent maintenance of the booth or actual or constructive knowledge

13

that the booth was loose. Of course, negligence cannot be presumed, it must be proven. Long v. Landy, 171 A.2d 1, 6 (N.J. 1961). Through Plaintiffs' cross-motion, they argue that the doctrine of *res ipsa loquitor* applies here. *Res ipsa loquitur* "is a doctrine that permits, but does not require, the jury to infer negligence, effectively satisfying that element of plaintiff's proofs . . . ." Khan v. Singh, 975 A.2d 389, 395 (N.J. 2009). It is properly applied in circumstances where "(a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect." Id. (quoting Bornstein v. Metropolitan Bottling Co., 139 A.2d 404, 408 (N.J. 1958)). This case appears to satisfy the conditions required. See also Van Staveren v. F.W. Woolworth Co., 102 A.2d 59 (N.J. Super. Ct. App. Div. 1954) (Doctrine of *res ipsa loquitur* was properly applied where patron seated herself on lunch counter stool, seat became disengaged from supporting pedestal, and patron fell to the floor.); Greshem v. Stouffer Corp., 241 S.E.2d 451 (Ga. Ct. App. 1978) (where defendant owned and operated restaurant and chair was furnished by restaurant to plaintiff for his use as a business invitee, jury would be authorized to infer negligence through use of *res ipsa loquitur* doctrine).

Even where *res ipsa loquitur* applies, it is merely a "permissible presumption" that may be refuted by other evidence. Bornstein, 139 A.2d at 408. A party is not entitled to summary judgment simply by virtue of showing that the *res ipsa loquitur* doctrine is available or appropriate, but the doctrine may enable a plaintiff to make out a *prima facie* case that will survive summary judgment. See Jerista v. Murray, 185 N.J. 175, 191, 883 A.2d 350, 360 (N.J. 2005) (*"res ipsa* does not shift the burden of proof to the defendant"). As such, Plaintiffs are not entitled to summary judgment. Given the record, however, the defense also is not entitled to summary judgment. The Court finds at this stage of the litigation that Plaintiffs may be entitled to a jury instruction allowing a jury to draw a permissible inference of negligence from the circumstances surrounding this incident.

## Conclusion

Accordingly, both motions for summary judgment will be denied. An appropriate Order will be entered.


Dated: December 1, 2015                            /s/ Joseph H. Rodriguez
                                                                                 JOSEPH H. RODRIGUEZ
                                                                                    U.S.D.J.